Alleging permanent and total disability as the result of accidental injury to his left leg while at work in defendant's sawmill, plaintiff filed this suit for the maximum *Page 249 
benefits under the Workmen's Compensation Act. Act No. 20 of 1914, as amended.
The answer admitted the occurrence of an accident to plaintiff and set forth that compensation had been paid from April 2, 1946 through September 21, 1946, and further set forth that plaintiff on August 24, 1946, began gainful employment and that plaintiff was as of that date, and since, without physical disability and fully capable of performing manual labor and doing the same work which he was doing at the time of the injury.
The case is on appeal from a judgment of the District Court rejecting plaintiff's demands.
[1, 2] Defendants denied employment of plaintiff. Mr. Smith, foreman in charge of the mill, testified that during the noon hour preceding the afternoon of the injury, plaintiff objected to the work he was performing and said he was not going to work any more at that job, and that he was told that if he couldn't do the work he was assigned to, he could go home. The foreman testified that he thought he had gone home. However, the record shows that plaintiff was at work on the day of the accident and the foreman's testimony that he told plaintiff that he would have to continue the job to which he had been assigned or go home, was not a definite showing that the employment had terminated. Plaintiff did not report for pay and apparently elected to put up with the undesirable duties. That defendants did not consider the noon incident as a termination of employment is indicated — although not necessarily so as a matter of law — by the fact that he was treated by the doctors employed by the company and paid compensation for several months following his injury. The compensation was discontinued when the defendants discovered that plaintiff had gone to work at another job. We conclude that the plaintiff was employed by the Parlor City Lumber Co., Inc., at the time he was injured.
The plaintiff testified that the accident occurred when there was a stoppage of the chain on the "hog" (a machine designed to cut waste wood into size suitable for boiler fuel). He testified that he got up on the machine and pulled a chunk of wood out; that he heard a noise like a belt broke; stepped down off the machine on his right leg and then put his weight on his left leg and discovered that this leg was injured, the clothes being stripped off and blood streaming out. He testified that he hopped to the signal whistle and then to the engine room. An ambulance was summoned by other employees and he was carried to the Riverside Sanitarium, where he was treated by Dr. Everett, under the supervision of Dr. Tisdale.
[3] Considerable testimony was introduced to indicate that plaintiff at the time of injury, was not engaged in his assigned duties, which were to work on the ground and not on the "hog" four to six feet above the ground, where the injury occurred. A careful examination of the testimony on this point does not show that plaintiff unnecessarily placed himself in the place of danger. His duties permitted and required him to be at various points in the mill, including the vicinity of the "hog." It undoubtedly was unwise for him to have exposed himself to the moving machinery, but his conduct was not such as to show that he had either deserted his post of duty or deliberately exposed himself to danger. We conclude that the injury occurred in the course of his employment.
[4] The remaining question for decision is whether or not plaintiff had recovered from his injuries at the time compensation payments were discontinued.
The injury occurred on April 2, 1946. Plaintiff was kept in the hospital approximately two weeks and remained under care of the doctors employed by defendants until July 26th. He sought no medical attention after that date and ceased using his cane in August. He testified that his left leg continues to cause him pain between the ankle and the knee and that there is, at times, swelling in the area of the ankle and foot. In support of his own testimony of disability, plaintiff introduced his wife, his landlady and Dr. C.H. Moseley.
Dr. Moseley's testimony was based on a clinical examination and on X-ray picture *Page 250 
of plaintiff's left leg and ankle; both of these were made on September 9, 1946 while plaintiff was working for the Standard Gin Company. He testified that there was a fracture of the fibula (smaller bone of the lower leg) at the lower half; that the fracture was united with a considerable amount of callous. He found scar tissue on the outside of the left leg and a small enlargement or bump over the fracture point. In his opinion, there was a serious injury to plaintiff's ankle joint, consisting of an unusual separation between the fibula and the astragalus. He interpreted his X-ray as showing the joint narrower on the fibula side (on the outside) than it was on the tibia side (on the inside). His testimony was taken on April 9, 1947, six or seven months after X-ray picture had been made and he stated that later X-rays would be of value in showing a proper uniting of the fractured fibula, but did not think that recent X-rays would be helpful in determining the present condition of the astragalus area.
The testimony showed that plaintiff, in August following the injury, went to work for the Standard Gin Company. His duties there were not arduous and consisted principally of watching the gauges and instruments in the engine room and some maintenance of the machinery. At times he caught a ride to work, but often walked from his house to the job and back. He continued this employment until the close of the ginning season in October. His wife and landlady testified that he had been unable to do heavy work since the injury.
The defendants produced Dr. A.D. Tisdale, the original attending physician, Dr. D.M. Moore, Dr. A.G. McHenry and Dr. A. Scott Hamilton. Dr. Tisdale testified that an X-ray made immediately after the accident showed a fracture of the fibula with the broken ends in such position as to likely produce a good juncture; that additional X-rays were made a few days later while the leg was still in the cast and there was shown a good alignment with callous formation indicating normal healing already beginning. Another X-ray was made on May 16th at the time the cast was removed, which showed normal callous formation and another made on June 3d showing increased healing formation with good alignment and no indication of any abnormal bone situation at the ankle joint. He testified that the plaintiff said that the leg felt fairly comfortable.
The other doctors introduced 'by defendants examined plaintiff shortly before the trial. Each testified that he believed plaintiff had recovered from his injury and was able to do the same type of manual work that he performed before the injury. Dr. Tisdale examined the X-ray film made by Dr. Moseley and found the alignment of the fibula bone as well as the spacing in the ankle joint to be normal.
Dr. D.M. Moore, an X-ray specialist, made X-rays on March 5, 1947 (nearly a year after the injury) and found evidence of the fracture of the fibula, with bones in good position. He found the ankle joint normal with satisfactory spacing between the fibula, tibia and astragalus bones, and testified that plaintiff's leg, in his opinion, was as good as ever.
Dr. McHenry testified that the X-rays made in March, 1947 showed satisfactory position and alignment of the fractured bone, and that the series of X-rays taken during treatment showed normal healing processes. He examined plaintiff and found that he had normal use of his left leg. He believed plaintiff able to perform manual labor and found no deviation from the normal spacing at the ankle joint between the tibia, fibula and the astragalus.
Dr. A. Scott Hamilton, an expert orthopedic surgeon, testified, after an examination of the plaintiff and the X-rays, that there was a normal and complete healing of the old fracture and that the surface scar was well healed with no adherence to underlying tissues, and that there were no restrictions as to the movement of plaintiff's left leg. He examined the X-rays made by Dr. Moseley as well as those made by the other physicians and considered that plaintiff had no disabling condition in the leg or in the ankle joint.
The District Court found for the defendants. Our study of the record discloses that the testimony amply supports this finding.
The judgment is affirmed, with costs. *Page 251